### H. J. BLACKBURN v. THE STATE.

No. 3827.   Decided November 10, 1915.

Rehearing denied December 8, 1915.

**1.—Theft of Mule—Evidence—Self-serving Declarations.**

Upon trial of theft of mules, there was no error in excluding testimony as to a conversation had by appellant with one of his witnesses, explaining possession of the alleged stolen property, as this was not coincident with the time defendant claimed to have purchased the alleged mules, nor with the time when he first knew he was charged with having stolen them, and was, therefore, a self-serving declaration.

**2.—Same—Evidence—Absence of Witnesses.**

Upon trial of theft of mules, there was no error in not permitting defendant to prove that at a former trial of the case, the same was submitted to the jury without the testimony of certain other State's witnesses which was admitted during the instant trial, as this fact was shown amply by all the testimony.

**3.—Same—Absence of Defendant's Witnesses—Argument of Counsel.**

Where, upon trial of theft of mules, defendant had been permitted to show why a certain witness for the defense did not attend the court, and that this was on account of sickness in his family, yet he had not accounted why this witness had not been placed on the witness stand at the former trial, there was no error in the argument of State's counsel to refer to the fact that this witness had not been placed on the witness stand at a former trial; besides, the absent testimony was not very material.

**4.—Same—Charge of Court—Explanation of Recent Possession.**

Where, upon trial of theft of mules, it appeared from all the testimony that defendant gave no explanation of his recent possession of the alleged mules, when he was first charged with the theft of them, and when he paid the owner for the same, and that his first statement with reference thereto, claiming that he had purchased the mules, was long thereafter, and the court charged the jury that if defendant bought the mules, or they had a reasonable doubt thereof, to acquit him, there was no reversible error.   Following Matthews v. State, 32 Texas Crim. Rep., 355, and other cases.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of theft of mules, the evidence showed that at the time he was charged with the theft thereof, and paid the owner therefor, defendant made no explanation of his possession, but afterwards made contradictory statements thereto, and the evidence was otherwise sufficient to sustain the conviction, there was no reversible error.   Following Payne v. State, 21 Texas Crim. App., 184, and other cases.

**6.—Same—Evidence—Self-serving Declarations.**

Upon trial of theft of mules, where defendant was found in possession of them in the State of Oklahoma, and gave no explanation of his possession, but

paid the owner for the mules, there was no error in refusing to admit testimony that after defendant's return to Texas he told one of his witnesses that he got said mules from a Mexican, and paid him $150 for them, as this was self-serving evidence. Distinguishing Hudson v. State, 90 S. W. Rep., 177.

**7.—Same—Rule Stated—Supporting Testimony—Declarations of Defendant.**

The rule is well settled in this State that proof of statements by the defendant made in harmony with his testimony, made after the motive existed which would likely prompt him to testify falsely, can not be introduced to support his testimony on the trial. Following Conway v. State, 33 Texas Crim. Rep., 327, and other cases.

**8.—Same—Rule Stated—Impeachment—Explanation of Recent Possession.**

Where, upon trial of theft of mules, the State had not sought to impeach the defendant's testimony, but proved by witness that defendant claimed to have purchased the mules, and when the proper time came, said he would produce a check given the Mexican for the mules .from which he claimed he purchased them afterwards, which the defendant denied on the witness stand, and testified that he paid the Mexican the money, to which the State offered no rebuttal testimony, testimony that the defendant claimed he had told one of his witnesses that he paid the Mexican for the mules without saying whether he paid it in money or by giving a check, and which statement was made long after he was charged with the theft, was not admissible in evidence.

**9.—Same—Age of Alleged Animals.**

Where, upon trial of theft of mules, defendant in his testimony claimed that he bought them from a Mexican, but there was a material discrepancy in the age and description of the different mules, there was no merit in defendant's contention that this fact was too much emphasized.

Appeal from the District Court of Concho. Tried below before the Hon. Jno. W. Goodwin.

Appeal from a conviction of theft of mules; penalty, two years confinement in the penitentiary.

The opinion states the case.

*Woodward & Baker,* for appellant.—On question of court's charge on recent possession: Hudson v. State, 90 S. W. Rep., 177; Lewis v. State, 17 Texas Crim. App., 140; Heskew v. State, 17 id., 161; Bean v. State, 24 id., 11; Lacy v. State, 31 Texas Crim. Rep., 38; Jones v. State, 29 Texas Crim. App., 20; Loan v. State, 153 S. W. Rep., 305; Baldwin v. State, 175 S. W. Rep., 701.

On question of argument of counsel: Gallaher v. State, 28 Texas Crim. App., 247; Branch's Crim. Law, sec. 316.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of recent possession: Branch's Crim. Law, secs. 795 and 797; Lynch v. State, 32 Texas Crim. Rep., 45, and cases cited in opinion.

HARPER, JUDGE.—Appellant was convicted of the theft of three mules, and his punishment assessed at two years confinement in the State penitentiary.

S. A. Hartgrove testified to the loss of three mules, and that upon

information received he went to Pawhuska, Oklahoma, and round all three of the mules in the stock pens. Mack Kyle testifies that the mules came to Pawhuska in a carload of stock shipped there by appellant. Appellant admits that fact, and also admits that when Mr. Hartgrove identified the three mules as his property he, appellant, paid Hartgrove for the mules, at that time making no explanation of how he came into possession of the mules.

However, upon his return home, the length of time not being shown, C. C. Bryson testifies that appellant told him he had purchased the mules and could show a check when the proper time came to produce it. W. E. Farmer also testifies that after appellant's return home, appellant told him that he had gotten in trouble about a portion of the shipment of stock he had made; that Mr. Hartgrove claimed three of the mules, and he had paid Hartgrove for them. He also stated to Mr. Farmer that he had gotten the mules from a Mexican.

On the trial of the case appellant testified that he was buying and selling stock, and that Mr. Kirkpatrick had telephoned him about a Mexican on his, Kirkpatrick's place, who had three mules for sale. That he went over and he, appellant, and W. E. Brown went down to where the Mexicans were, and he purchased the mules from the Mexican. He did not know his name, nor where he now is; that he paid him the money, getting it from Fred Taylor. He says Taylor was in attendance on court, but neither he nor the State called Taylor as a witness. Appellant denied telling Bryson that he had paid for the mules by giving a check, and that he could produce the check when the time came to produce it. Kirkpatrick testified in behalf of appellant, and said that a Mexican on his place had tried to sell him three mules, but he did not buy, and telephoned appellant about the Mexican having the mules; that appellant came over, and appellant and Brown went down to where the Mexican was at work, and when appellant and Brown returned, appellant told him he had purchased the mules. Appellant asked him to let the mules stay in his pasture for a few days, and he refused to give permission. On cross-examination he said one of the mules was a yearling, another two-year-old, while the third was a three-year-old. That he knew of appellant buying no other mules from a Mexican other than those three.

Mr. Hartgrove testified that the mules he lost and which he found in appellant's possession in Oklahoma, and which appellant paid him for, were all two-year-old mules.

When appellant returned from Oklahoma he had a conversation with Kirkpatrick, and desired to prove by Kirkpatrick what he, appellant, said to Kirkpatrick. This would be inadmissible, for it was not coincident with the time he claimed to have purchased the mules, nor with the time when he first knew he was charged with having stolen the mules. The court, in approving the bill, states: "Approved with this explanation, towit: Defendant was first seen with the mules in Oklahoma and his right challenged and he paid Hartgrove for them. The conversation offered in evidence was long after this. Kirkpatrick tes-

tified to having told defendant of these mules and that defendant informed him at the time of the alleged purchase that he had bought them and the defendant also testified fully to his purchase of the mules. The statement of defendant offered in evidence it occurred to me was self-serving, and an attempt to bolster his evidence by self-serving declaration."

Appellant contends that the court erred in not permitting him to prove by the witness Kirkpatrick that at a former trial of the case the case was submitted to the jury alone upon the evidence of the State, and upon the testimony of the State's witnesses, Hartgrove and Bryson, and that Farmer and Kyle were not present and did not testify. This was amply shown by other testimony. On the cross-examination of Kyle appellant asked if he did not know he could not be compelled to come to Texas to testify; that he had received $20 to pay his expenses, and he expected to receive $2 per day for his time and all his expenses. That he had never testified before. Appellant was permitted to prove that Brown was in attendance on the last term of court, and that he had recently lost his wife and one of his children, and it was, therefore, impossible for him to attend court. The witness Kirkpatrick could not possibly know why appellant and his attorneys had not placed Brown on the witness stand when he was in attendance on court. They alone would know why they did not do so, and if they offered to testify why they did not do so, we are sure the court would not have sustained an objection to them so testifying. And as no such explanation was forthcoming, it was not improper for the State's counsel to comment on the fact, that while appellant testified that Brown was present when he purchased the mules from the Mexican, he had not been called as a witness. As appellant had proved the condition of Brown's family as a reason why he was not in attendance, and the further fact that he was present at the former term and had not been called to testify, the remarks of State's counsel were within the record. As far as this record discloses no one knows what Brown would have testified had he been present, and if he had testified as did Kirkpatrick, that appellant did purchase three mules from a Mexican, but also testified that they were one, two and three years old, it would not have materially aided appellant. Appellant contends there is no testimony showing the falsity of his statement that the mules lost by Hartgrove and found in his possession in Oklahoma were not the mules he claimed to have purchased from the Mexican. The mules Hartgrove lost were two years old, while under this record the mules he says he purchased from the Mexican was a yearling, a two and a three-year-old. This would have a very strong tendency to lead a jury to believe that the mules he claimed to have purchased from the Mexican were not the Hartgrove mules.

Appellant also contends that the court erred in failing to give his special charges on explanation of possession of recently stolen property. Appellant gave no explanation when first charged with the offense in Oklahoma, nor when he paid Hartgrove for the mules. It is after his return to Texas he first makes a statement or claim that he had pur-

chased the mules from a Mexican. The court in his charge instructed the jury: "If you find from the testimony that the defendant bought the mules he is charged with stealing, or if you have a reasonable doubt as to his having bought said mules, you will acquit him." This character of charge was approved in Mathews v. State, 32 Texas Crim. Rep., 355, and it was held not to be error to give any other charge on defendant's explanation. In this case, as in that case, the defendant's explanation was a purchase, and he gave no other explanation. See also Wheeler v. State, 34 Texas Crim. Rep., 350; Holmes v. State, 42 S. W. Rep., 979; Sisk v. State, 42 S. W. Rep., 985; Ford v. State, 51 S. W. Rep., 935, and cases cited. In the case of Hays v. State, 36 Texas Crim. Rep., 533, this court said: "When the defendant was arrested he was found in possession of the stolen property. The second bill of exception is an insistence, on the part of appellant, that the court committed an error in not charging on recent possession, in connection with the explanation of defendant. While the court did not give in terms, a charge on possession and explanation, he did that which was better, authorized the jury to acquit the defendant, if they believed the defendant bought the pistol, or they had a reasonable doubt concerning the matter." Such a charge as that given by the court, instead of the more lengthy one on possession and explanation, was held to be preferable in the case against Douglas Whitfield, decided at the present term of this court.

We have carefully examined each question in the motion for a new trial, and none of them present any error which would call for a reversal of the case.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

December 8, 1915.

HARPER, JUDGE.—Appellant has filed a motion for rehearing in this cause, one of the grounds being that the evidence is of too weak and unsatisfactory character to permit the verdict to stand. The theft of three mules from Mr. Hartgrove is shown beyond the shadow of a doubt; this fact is not questioned in the record. Shortly thereafter the stolen animals are found in possession of appellant in Oklahoma. At that time he gives no explanation of his possession, but proceeds to pay Mr. Hartgrove for the stolen animals. If he had any explanation to give of his possession of the stolen animals, then it was it should have been given instead of merely paying for the property when his possession of the mules was challenged. Instead of doing so, he is as silent as the grave as to how he came in possession of the stolen property. Under all of our decisions this testimony has been held sufficient to sustain a verdict. Payne v. State, 21 Texas Crim. App., 184; Morgan v. State, 25 Texas Crim. App., 513; Roberts v. State, 60 Texas Crim. Rep., 20; Powers v. State, 162 S. W. Rep., 832, and cases cited.

The State in making its case proved by J. C. Bryson, after appellant had returned to Texas, that he had a conversation with appellant in which appellant told him he had purchased the mules and could produce the check; that he could produce the check at the proper time. The State also proved by W. E. Farmer that after appellant's return to Texas he had a talk with him about the mules in question. That appellant said Mr. Hartgrove came to Oklahoma and accused him of stealing the mules, and he paid Hartgrove for them. That he purchased the mules from a Mexican.

After the State had made this proof appellant took the witness stand and testified that he purchased the three mules in question from a Mexican, and paid him one hundred and fifty dollars for them. That he got the money from Fred Taylor, and paid the Mexican in money. That he never told Bryson he gave the Mexican a check for the money.

After having so testified, he desired to prove by E. S. Kirkpatrick that after Hartgrove had claimed the mules and after he had paid Hartgrove for the mules, and after his, appellant's, return to Texas, that he, appellant, told Kirkpatrick that "he paid the Mexican one hundred and fifty dollars for the mules." Appellant earnestly insists that we erred in holding that the court did not err in refusing to permit Kirkpatrick to testify that appellant told him after his return to Texas he paid the Mexican one hundred and fifty dollars for the mules. That we must have overlooked the case of Hudson v. State, 90 S. W. Rep., 177, and desires to know if we intend to overrule that case. It is true our attention was not called to this case in the brief of counsel or otherwise, at the time the original opinion was written, but we will say that we do not desire nor intend to overrule the rule of law therein announced. In that case appellant testified on the trial that he was fourteen years of age. On this statement the State sought to impeach him, and introduced three witnesses who testified that Hughes had told them he was sixteen years of age. The court held that Hughes should have been permitted to support his testimony by proving that he testified before the grand jury when carried before them by the district attorney that he was only fourteen years of age. It has always been the rule in this State that when the State seeks to impeach a witness by proof of contradictory statements, he may support his testimony by showing that he had made similar statements to that he testified to on the trial. This is not only the rule announced in the Hudson case, supra, but it has been so held in Williams v. State, 24 Texas Crim. App., 637; Craig v. State, 30 Texas Crim. App., 619; Campbell v. State, 35 Texas Crim. Rep., 160; Pitts v. State, 132 S. W. Rep., 801, and cases cited in Branch's Crim. Law, sec. 874. But the rule is equally well settled in this State that proof of statements made in harmony with his testimony *made after the motive existed* which would likely prompt him to testify falsely can not be introduced to support his testimony on the trial. (Conway v. State, 33 Texas Crim. Rep., 327; Sanders v. State, 31 Texas Crim. Rep., 525; Anderson v. State, 50 Texas Crim. Rep., 134; Porter v. State, 50 S. W. Rep., 380.) In this case it is made plain that

it was after appellant had been charged with the theft of these mules, and after he had paid Hartgrove for them, and after he had returned from Oklahoma, that he made the statement to Kirkpatrick, and the same motive existed then to testify falsely as existed on the trial of this case. In the Hudson case it is not made to appear that it was after Hudson had been charged with an offense that he made the statement held to be admissible, and if it did so appear it would not be in harmony with a long list of authorities in this State, and as announced in vol. 7, Ency. of Ev., p. 286. See also Barkley v. Copeland, 74 Cal., 1; McCord v. State, 83 Ga., 521; Waller v. People, 209 Ill., 284; State v. Vincent, 24 Iowa, 570; State v. Hendricks, 32 Kan., 559; State v. Fontenot, 48 La. Ann., 283; Com. v. Jenkins, 10 Gray (Mass.), 485; People v. Finnegan, 1 Park Crim. (N. Y.), 147; State v. Exumis, 50 S. E. Rep. (N. C.), 283; Com. v. Brown, 23 Pa., 470; State v. McDaniel, 68 S. C., 304; Legere v. State, 111 Tenn., 368. In addition to this, the State had not sought to impeach the defendant in this case. The State made its case, and in doing so proved by a witness that appellant claimed to have purchased the mules, and when the proper time came said he would produce a check given the Mexican for the mules. After this testimony had been adduced, appellant took the stand and denied ever having told the State's witness any such thing. He then testified that he purchased the mules and paid the Mexican in money. After appellant testified the State offered no testimony in rebuttal. So there is no question of impeaching a witness in this case. Again, the alleged testimony of Kirkpatrick would tend no more to support the testimony of appellant than it would tend to support the testimony of the State's witness. The difference in the testimony is the State's witness testified that appellant told him he paid the Mexican by giving him a check, and would produce it at the proper time. Appellant says he did not tell the witness this, but testified he paid the Mexican in money. Kirkpatrick's testimony, as alleged, would only be that appellant told him he paid the Mexican one hundred and fifty dollars for the mules, without saying whether he paid it in money or by giving a check.

Appellant says that we laid too much emphasis on the age of the mules as testified to by the witnesses. Hartgrove testified about the mules found in possession of appellant in Oklahoma as follows: "They were my mules; these mules were taken from my pasture without my consent. I bought these mules from E. B. Noel; they were yearling mules, coming twos—you might say two years old," making them all the same age.

Appellant said Kirkpatrick called his attention to the mules he claimed to have purchased from the Mexican, and Kirkpatrick testified the mules he called appellant's attention to were of the following ages: "One of those mules was a yearling mule, and the other would be near two years old; and one of them was a three-year-old." This was the testimony on the trial, and we do not think too much emphasis was placed on this discrepancy in the ages of the mules appellant claimed

to have purchased from the Mexican. The description did not fit the Hartgrove mules found in his possession.

All the other questions were discussed in the· original opinion, and we do not deem it necessary to do so again, but we have again discussed the above questions owing to the insistence of appellant's counsel.

The motion for rehearing is overruled.

*Overruled.*