TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00325-CR







Daniel Balderas Reyes, aka Daniel Reyes-Balderas, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NO. A-96-0489-S, HONORABLE BARBARA WALTHER, JUDGE PRESIDING







Appellant Daniel Balderas Reyes was convicted of murder and sentenced to fifty years in
the Institutional Division of the Texas Department of Criminal Justice. See Tex. Penal Code Ann. § 19.02
(West 1994). On appeal, appellant argues in four points of error that (1) the trial court erred by refusing
to admit a police report containing appellant's exculpatory, self-serving statement; and (2) the trial court
erred by not granting a mistrial or new trial for an alleged impermissible jury argument by the State. We
will affirm.

BACKGROUND

Although the sufficiency of the evidence is not challenged, a brief recitation of the facts is
necessary to put the points of error in proper perspective.

Appellant was indicted for the June 27, 1996 murder of Ollie Green. Green was found in
the early morning hours of June 27th, beaten to death with a "wonder bar," which is a metal tool used in
the carpentry trade. Appellant, who is a carpenter, admitted that he was at the scene of the crime on the
night Green was killed and that the blood found on his clothes was that of the victim. He alleged, however,
that he arrived at the scene as Green was being beaten, and that Green's blood got on his clothes as he was
trying to save the victim's life. Appellant contended that the perpetrator of the crime escaped on foot
before the police arrived. 

At trial, the State introduced both circumstantial and direct evidence linking appellant to
the murder. For example, the State called two of the victim's neighbors, Teresa and Enrique Villareal, who
gave eyewitness testimony about the murder. Teresa Villareal recounted that on the night in question, she
saw appellant's truck pull-up and "stop" in front of Green's house. She saw appellant get out of his truck
and "walk towards Mr. Green's porch . . . in a hurry." She testified that approximately "five to seven
minutes later" she heard a "voice" calling for "help." After she heard the voice calling for help, she looked
outside the living room window and saw "the same gentleman that had gotten off of the truck . . . kneeling
down in the yard. . . striking something" with "a piece of metal." At the same time, she heard a
"gentleman," later identified as the victim, "moaning very loud." After hearing her neighbor's moans, she
awoke her son to call 911. She also testified that she awoke her husband, Enrique, to witness what was
going on outside in front of Green's house. Enrique was then called by the State to reaffirm Teresa's story
that appellant was kneeling over the victim and striking him with a metal object.

The State also called San Angelo Police Officer Edwin Smith. Officer Smith was the first
police officer to arrive at the scene. Smith testified that, as he approached the victim's house, he saw
appellant standing on the porch with "a large amount of blood on his clothing." He testified that the victim's
body was approximately "ten [to] twelve feet" from appellant, and that appellant "seemed very nervous
and sweaty." 

On cross-examination, the defense vigorously sought on two occasions to introduce Smith's
police report about the events taking place on the night in question. The report contained appellant's
following self-serving statements:


As reporting officer approached the house, I asked [appellant] "who did this?" 
[Appellant] pointed between the houses . . . and stated "they went that away."


* * * 


After noticing the victim, [appellant] advised that the unknown subject was beating
him up as he was going by. [Appellant] advised at this time that he was a friend to the
victim and stopped to help. When he helped the victim the other person ran southward
between the houses. 



The State timely objected on the ground that the report was hearsay within hearsay. After arguments of
counsel, the trial court ruled that the report itself was admissible, but the self-serving statements contained
in the report had to be excised. (1) It is this ruling that forms the basis of appellant's first two points of error.


DISCUSSION

Hearsay is defined by the rules of evidence as "a statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter
asserted." Tex. R. Evid. 801(d). "Matter asserted" includes "any matter explicitly asserted, and any matter
implied by a statement, if the probative value of the statement as offered flows from the declarant's belief
as to the matter." Tex. R. Evid. 801(c). Hearsay within hearsay is not admissible unless each part of the
combined statements conforms with an exception to the general rule excluding hearsay. See Tex. R. Evid.
805.

In the present case, appellant sought to offer his self-serving hearsay statements which were
contained in a "hearsay" police report. Therefore, we must examine whether appellant's self-serving
hearsay statement itself falls within an exception to the hearsay rule, and if it does, whether the "hearsay"
police report is admissible under an exception to the hearsay rule. 

It is the rule in Texas that self-serving declarations are not admissible in evidence as proof
of the facts asserted. See Hafdahl v. State, 805 S.W.2d 396, 402 (Tex. Crim. App. 1990); Crane v.
State, 786 S.W.2d 338, 353-54 (Tex. Crim. App. 1990); Allridge v. State, 762 S.W.2d 146, 152 (Tex.
Crim. App. 1988); Chambers v. State, 905 S.W.2d 328, 330 (Tex. App.--Fort Worth 1995, no pet.);
State v. Morales, 844 S.W.2d 885, 891-92 (Tex. App.--Austin 1992, no pet.). There are, however,
exceptions to this general rule which permit introduction of such proof. Those exceptions include: (1) when
part of the statement was previously offered by the State; (2) when the statement was necessary to explain
or contradict acts or declarations first offered by the State; or (3) when the accused's self-serving
declaration was part of the res gestae of the offense or arrest. See Allridge, 762 S.W.2d at 152;
Singletary v. State, 509 S.W.2d 572, 576 (Tex. Crim. App. 1974). The record in this case is clear that
the first two exceptions to the general rule excluding self-serving statements are not applicable. However,
we believe that this record requires a closer examination as to whether the accused's self-serving
declaration was part of the res gestae of the offense or arrest. 

One of the factors for determining a res gestae statement in Texas is "spontaneity." See
Allridge, 762 S.W.2d at 152; Rubenstein v. State, 407 S.W.2d 793, 795 (Tex. Crim. App. 1966). This
principle was explained long ago as follows:


For a statement to be a part of the res gestae, the declaration must deal substantially with,
and must grow out of, the main fact so as to be spontaneous and not, in any event, a
narration of a past event or occurrence. Above everything else, there must exist that
spontaneity which takes the statement out of the realm of narration or premeditation. 



See Allridge, 762 S.W.2d at 152 (quoting Trammell v. State, 167 S.W.2d 171, 174 (Tex. Crim. App.
1942)). In Singletary, the Texas Court of Criminal Appeals elaborated on this standard, noting: "These
principles embrace such factors as time elapsed, and, more importantly, spontaneity, or whether the
statement was instinctive." Singletary, 509 S.W.2d at 577; see also Fisk v. State, 432 S.W.2d 912,
914-15 (Tex. Crim. App. 1968).

After carefully examining the record before us, we hold that there is nothing in this record
to establish the res gestae exception. Appellant made no attempt to elicit the context of the statements
when he was examining Officer Smith at trial. Moreover, appellant made no attempt to show through
Officer Smith's testimony the time frame or appellant's demeanor when he reported to Officer Smith the
actions of the unknown suspect. As such, we cannot tell from a cold reading of the record when Officer
Smith elicited appellant's statement in relation to when the crime occurred. Thus, we cannot say whether
the "spontaneity" of appellant's statements existed to take such statements "out of the realm of narration
or premeditation." See Allridge, 762 S.W.2d at 152. Therefore, we hold that the trial court did not abuse
its discretion in excluding appellant's self- serving statements.

Even if we assume error in the trial court's exclusion of appellant's self-serving statements,
we believe that such exclusion was harmless. Appellant argues that he was harmed by the trial court's
exclusion of his exculpatory statements contained within the police report because he was "forced to testify
to explain the circumstances surrounding the incident on the night in question." Thus he argues that because
he was required to testify, he was "compelled to reveal the fact that he had a prior conviction." The State
responds by arguing that the evidence regarding appellant's prior conviction would have been admitted
even if the statements in the report had been deemed admissible. Specifically, the State argues that
appellant's prior conviction would have been admissible under rule 806 of the Texas Rules of Evidence
which specifically permits the impeachment of a non-testifying defendant or witness when hearsay
statements are admitted on his behalf. See Appling v. State, 904 S.W.2d 912, 916-17 (Tex.
App.--Corpus Christi 1995, pet. ref'd) (State may attack credibility of appellant/declarant who invokes
Fifth Amendment privilege not to testify); see also Tex. R. Evid. 806. (2) The appellant rejoins by arguing
that Rule 806 is not automatic in its application and requires certain predicate facts to be established before
prior convictions may be introduced. 

While the State's argument is compelling, we believe that the harmlessness of any assumed
error is supported on another ground. We believe that it is disingenuous for appellant to complain that he
was "forced to testify" in order to explain "fully" what happened on the night in question, when appellant
had alternative means of adducing comparable evidence through other reasonable means. See Morales,
844 S.W.2d at 892 (defendant cannot complain about having to testify where alternative means exist to
adduce comparable evidence). Appellant cannot complain that he was "forced to testify" when he could
have questioned Officer Smith regarding his actions on the night in question. No attempt was made by
appellant to question Officer Smith regarding any statements made to Smith during the course of the
investigation or the facts and circumstances surrounding the investigation itself. Appellant's attempt to get
his self-serving statements admitted through the written police report was an obvious attempt to adduce
such a statement without fear of cross-examination. Since appellant did not avail himself of all reasonable
methods for introducing the proffered statements, we cannot say that appellant was harmed by the trial
court's ruling. We overrule appellant's first two points of error.

In his third and fourth points of error, appellant argues that the trial court erred in not
granting a mistrial or a new trial after the State allegedly made impermissible jury arguments that either
mischaracterized the evidence presented or attempted to bolster the testimony of the State's witnesses. 
The record indicates, however, that after each alleged improper argument, appellant failed to timely pursue
his objections to an adverse ruling. The record indicates that after appellant objected to each alleged
improper argument the trial court instructed the jury to remember the testimony or evidence as they heard
it and not as the lawyer characterized it. It is therefore apparent that the trial court granted all the relief
requested by appellant at the time of his objection. The record does not indicate that appellant ever
requested an instruction to disregard the argument. Further, while appellant finally moved for a mistrial, it
was done after the jury had retired to deliberate on its verdict and therefore was untimely. See Cooks v.
State, 844 S.W.2d 697, 727-28 (Tex. Crim. App. 1992) (to preserve jury-argument error, 
contemporaneous objection must be made and if sustained, defendant must request instruction to disregard
argument and, if granted, move for mistrial). Therefore, appellant forfeited his right to complain about the
jury arguments on appeal. See Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)
(defendant's failure to pursue adverse ruling forfeits right to complain about the argument on appeal). 


Furthermore, even if appellant had properly preserved error for our review, we hold that
any error would have been harmless. See Tex. R. App. P. 44.2. First, any alleged improper argument was
made harmless by the trial court's instruction to the jury to remember the testimony or evidence as they
heard it and not as the lawyers characterized it. See Ortiz v. State, 577 S.W.2d 246, 249 (Tex. Crim.
App. 1979) (error made harmless by court's instruction to consider only evidence adduced at trial and
not attorney's remarks). Second, "in light of the existence of the other evidence" such as the direct
evidence and the circumstantial evidence as described above, we conclude that any error in the State's
argument had no impact on the jury. See Cockrell, 933 S.W.2d at 89. Therefore, we overrule appellant's
third and fourth points of error.


CONCLUSION

Having overruled all of appellant's points of error, we affirm the judgment of the trial court.



 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: June 4, 1998

Do Not Publish
1. We note that after the trial court ruled that the self-serving statement had to be excised, appellant
withdrew his request to admit the report. However, the report was offered on a bill of exception for the
record to properly preserve error.
2. Rule 806, which is substantially identical to the corresponding rule of criminal evidence in effect at
appellant's trial provides:


 When a hearsay statement, or a statement defined in Rule 801(e)(2), (C), (D), or (E),
or in civil cases a statement defined in Rule 801(e)(3), has been admitted in evidence, the
credibility of the declarant may be attacked, and if attacked may be supported, by any
evidence which would be admissible for those purposes if declarant had testified as a
witness. Evidence of a statement or conduct by the declarant at any time, offered to
impeach the declarant, is not subject to any requirement that he may have been afforded
an opportunity to deny or explain. If the party against whom a hearsay statement has been
admitted calls the declarant as a witness, the party is entitled to examine him on the
statement as if under cross-examination.



t was harmed by the trial
court's ruling. We overrule appellant's first two points of error.

In his third and fourth points of error, appellant argues that the trial court erred in not
granting a mistrial or a new trial after the State allegedly made impermissible jury arguments that either
mischaracterized the evidence presented or attempted to bolster the testimony of the State's witnesses. 
The record indicates, however, that after each alleged improper argument, appellant failed to timely pursue
his objections to an adverse ruling. The record indicates that after appellant objected to each alleged
improper argument the trial court instructed the jury to remember the testimony or evidence as they heard
it and not as the lawyer characterized it. It is therefore apparent that the trial court granted all the relief
requested by appellant at the t